**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Hundley Lynn Ford, Jr., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:12-CV-04558 |
| v. | ) | |
| | ) | Hon. Amy St. Eve |
| Wexford Health Sources, Inc., | ) | |
| S. A. Godinez, Marcus Hardy, | ) | |
| Darryl Edwards, Nancy Pounovich, | ) | |
| Anna McBee, Landria Dennis, | ) | |
| Parthasarathi Ghosh, Imhotep Carter, | ) | |
| Latonya Williams, and Joseph Sheehey, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

Plaintiff, Hundley Lynn Ford Jr. ("Mr. Ford"), submits this Memorandum of Law in

Opposition to Defendants Wexford Health Source, Inc., Parthasarathi Ghosh, Imhotep Carter,

and Latonya Williams' (collectively, "Defendants") Motion to Dismiss Plaintiff's Amended

Complaint. Co-Defendants S.A. Godinez, Marcus Hardy, Darryl Edwards, Nancy Pounovich,

Anna McBee, Landria Dennis and Joseph Sheehey have not moved to dismiss the claims brought

against them, and instead have answered. (Dkt. 40.)

**INTRODUCTION**

On June 12, 2012, after four years of prolonged, severe, and untreated back pain,

Mr. Ford filed a *pro se* Complaint in this Court. (Dkt. 1.) On June 15, 2012, this Court issued an

Order pursuant to 28 U.S.C. § 1915A, finding that Mr. Ford "has articulated a colorable federal

cause of action with respect to deliberate indifference of serious medical condition." (Dkt. 5 at

2.) This Court then appointed the undersigned counsel to represent Mr. Ford. On August 30,

1

2012, Mr. Ford filed an Amended Complaint ("Complaint") further detailing the basis for his claims against Defendants. (Dkt. 12.)

In response to Mr. Ford's detailed Complaint, Defendants Wexford, Ghosh, Carter, and Williams filed what appears to be an off-the-shelf, pro forma motion to dismiss. In filing their formulaic motion, Defendants perpetuate their longstanding failure to appreciate the nature of Mr. Ford's serious medical condition and the importance of promptly addressing that condition. Mr. Ford's detailed Complaint easily meets the minimum notice pleading requirements of Fed. R. Civ. P. 8(a)(2).

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint need only contain sufficient facts to state a claim for relief that is plausible on its face. *Young v. Wexford Health Sources, Inc.*, No. 10 C 8220, 2012 U.S. Dist. LEXIS 17416, at *5 (N.D. Ill. Feb. 12, 2012). When ruling on a defendant's motion to dismiss, the court accepts as true all of the factual allegations contained in the complaint and draws all reasonable inferences in the plaintiff's favor. *McDonald v. Wexford Health Sources, Inc.*, No. 09 C 4196, 2010 U.S. Dist. LEXIS 78276, at *4 (N.D. Ill. July 30, 2010). Further, particularly where constitutional rights are concerned, the Seventh Circuit has been reluctant to dismiss inmate complaints at this early stage in the litigation. *See LaBatt v. Twomey*, 513 F.2d 641, 650 (7th Cir. 1975) ("We have previously noted the serious question as to whether the summary judgment procedure should ever be employed against an incarcerated party. . . . [A]n overriding interest must be fairness to the parties, especially where important constitutional rights are asserted.") (internal citations omitted).

## ARGUMENT

Defendants' motion to dismiss should be denied for the following three reasons:

*First*, Defendants misstate the facts and misconstrue the governing legal standard. Mr. Ford has adequately pleaded facts which demonstrate that not only were defendants aware of Mr. Ford's serious medical need, but Defendants repeatedly failed to follow through on treatment Defendants themselves determined was appropriate. Even Defendants' own case law demonstrates that Defendants' inaction amounts to a deliberate indifference to medical need.

*Second*, Defendants' conclusory assertion of the qualified immunity defense ignores that Mr. Ford has adequately alleged a violation of his rights under the Eighth Amendment of the United States Constitution, and that the standards governing Defendants' conduct were clearly established at the time of Defendants' inaction.

*Third*, Mr. Ford's Complaint contains detailed allegations regarding policies and practices of delaying medical appointments, delaying the dispensing and renewing of prescriptions and permits, and delaying treatment by third party medical care providers as cost saving measures. Additionally, Mr. Ford not only alleged Defendant Carter enacted an express policy of voiding Defendant Dr. Ghosh's orders as part of the effort to cut costs, but Mr. Ford also attached documents to his Complaint evidencing the existence of that policy. Mr. Ford has easily met, and exceeded, the minimum pleading requirements of Fed. R. Civ. P. 8(a)(2).

## I. Mr. Ford has Adequately Plead a Claim for Deliberate Indifference to Medical Need.

To state a claim for relief under Fed. R. Civ. P. 8(a)(2), a plaintiff need only make "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to 'give the defendant fair notice of what the . . . claims is the grounds upon which it rests." *Jones*

*v. Boruta*, No. 10 C 2961, 2011 U.S. Dist. LEXIS 62387, at *2 (N.D. Ill. May 31, 2011) (quoting

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); Fed. R. Civ. P. 8(a)(2).

Prison officials violate the Eight Amendment's prohibition against cruel and unusual

punishment when they display deliberate indifference to the serious medical needs of prisoners.

*See Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). Generally, the existence of deliberate

indifference is a fact intensive inquiry, inappropriate for a motion to dismiss. *See Watkins v.*

*Ghosh*, No. 11 C 1880, 2011 U.S. Dist. LEXIS 136000, at *15 (N.D. Ill. Nov. 28, 2011).

Defendants do not dispute that Mr. Ford has adequately alleged that he suffers from an

objectively serious medical condition. Instead, Defendants argue that they were not aware of

Mr. Ford's serious medical need, or alternatively, even if they were aware of Mr. Ford's

condition, they were not deliberately indifferent to Mr. Ford's need. Despite Defendants'

assertion about their claimed lack of knowledge, in the context of reviewing a motion to dismiss,

the Court must accept as true all well plead allegations in the Complaint. And as even a brief

review of the Complaint will demonstrate, Mr. Ford has adequately pleaded that each of the

Defendants were deliberately indifferent as to Mr. Ford's serious medical need. (Compl. ¶¶ 23,

25, 30, 32, 35, 37, 40, 42, 45, 67.)

### A. Defendant Ghosh Was Personally Involved in the Delay and Denial of Mr. Ford's Medical Treatment.

For several reasons, Mr. Ford's Complaint satisfies any pleading standard governing his

claims against Defendant Ghosh. *First*, Defendants misstate the allegations contained in Mr.

Ford's Complaint. It is a settled principle that prison officials must be personally involved in the

constitutional deprivation alleged in order to be held liable. *Watkins*, 2011 U.S. Dist. LEXIS

136000, at *15. And, based on this principle, Defendants argue that Defendant Ghosh "is not a

mind-reader and he cannot be held liable for delays in treatment he is not aware of." (Mot. at 8.)

But that argument entirely misses the point of Mr. Ford's Complaint. Defendants concede, in the very same paragraph of their brief where they contend that Defendant Ghosh is not a mind reader, that Mr. Ford "alleges that he wrote to Defendant Ghosh numerous times to notify him that he was still waiting for treatment." (Mot. at 8.) By alleging that Mr. Ford wrote to Defendant Ghosh on multiple occasions and put Defendant Ghosh on notice, Mr. Ford has adequately alleged Defendant Ghosh's personal knowledge of his condition and that he was not receiving the treatment Dr. Ghosh had ordered. (Compl. ¶¶ 30, 32, 35, 37.) *Watkins*, 2011 U.S. Dist. LEXIS 136000, at *18 (where a grievance is sent directly to defendant, "we can infer that [defendant] had actual knowledge of [plaintiff's] injuries and the ongoing denial of treatment for those injuries but failed to take action.").

*Second*, Defendants misstate the law. Defendants argue that Mr. Ford "does not attach any of the alleged letters [sent to Defendant Ghosh]" to his Complaint. (Mot. at 8.) Defendants misunderstand the standard governing a 12(b)(6) motion to dismiss. To state a claim for relief, Mr. Ford need only allege facts sufficient to state a claim and need not prove his claim via attachments to his Complaint. *See Young*, 2012 U.S. Dist. LEXIS 17416, at *4-5.

*Third*, Defendants' Motion exhibits the same inability and unwillingness to understand Mr. Ford's medical history that lead to the extraordinary delay and denial of treatment which resulted in this litigation. Although Mr. Ford was referred to the UIC Pain Clinic on January 19, 2011, contrary to Defendants' misrepresentation of the allegations in the Complaint, Mr. Ford did not visit the UIC Pain Clinic in May of 2011. (Mot. at 8; Compl. ¶¶ 37, 41, 44, 47, 57.) After injuring his back in April, 2008, Mr. Ford did not receive treatment at the UIC Pain Clinic in 2008, 2009, 2010, or 2011. (*See* Compl. ¶¶ 18, 23, 25, 30, 33, 37, 41, 44, 47, 57-64.)

*Fourth*, even Defendants' own case law makes clear that Mr. Ford has adequately alleged that Defendant Ghosh was deliberately indifferent as to Mr. Ford's medical need. (Mot. at 12 (citing *Flournoy v. Ghosh*, No. 07 C 5297, 2012 U.S. Dist. LEXIS 103388 (N.D. Ill. July 24, 2012)).) In *Flournoy*, the plaintiff inmate suffered a delay of over a year in his referral to the UIC ophthalmology department. *Id*. at *19. In the interim, plaintiff repeatedly notified doctors, including Dr. Ghosh, that his prescriptions were not being renewed on a timely basis. *Id*. at *24. As a result of the persistent delays, plaintiff's condition deteriorated to the point that he required surgery. *Id*. at *7. In denying Dr. Ghosh's motion for summary judgment, the court rejected Dr. Ghosh's argument that "once he wrote the prescriptions, the matter was out of his hands." *Id*. at *25.

Mr. Ford suffered a prolonged delay in his referral to the UIC Pain Clinic and repeated lapses in the filling and renewal of his prescriptions. (Compl. ¶¶ 31, 37, 42, 47.) Mr. Ford wrote to Defendant Ghosh and notified him he was still waiting for the treatment Dr. Ghosh had oredered. (Compl. ¶ 37.) In the absence of treatment, Mr. Ford's condition continued to worsen, as he suffered prolonged pain and suffering, and multiple episodes in which his condition left him immobile in his cell, unable to leave his cell for lunch or dinner. (Compl. ¶ 37, 40-41.) Defendant Ghosh cannot absolve himself of responsibility by writing an order alone. *See Flournoy*, 2012 U.S. Dist. LEXIS 103388, at *25. As medical director, Defendant Ghosh had responsibility for the coordination of Stateville's health-care program and "Ghosh cannot escape responsibility by claiming that all he was required to do was hand a prescription over . . . ." *Id*.

*Finally*, Defendants rely on inapposite case law to further argue that Defendant Ghosh cannot be expected to have day-to-day knowledge of the lack of treatment of prisoners. (Mot. at 7-8). As a preliminary matter, Mr. Ford alleges that Defendant Ghosh failed to act on his

personal knowledge of Mr. Ford's lack of treatment, not that Defendant Ghosh failed to act on general knowledge as to anonymous prisoners. (Compl. ¶¶ 35, 37.) Defendants inexplicably cite to *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981) to support the argument that "it is not proper to presume" that Defendant Ghosh would have knowledge of Mr. Ford's denial of treatment. (Mot. at 8.) As Defendants note, *Duncan* observes that "it is doubtful that a prison warden would be directly involved in the day-to-day operation of the prison hospital . . ." (Mot. at 8 (citing *Duncan*, 644 F.2d at 655).) But the Seventh Circuit's teaching in *Duncan* is inapplicable here. Defendant Ghosh was not the warden, he was the medical director. (Compl. ¶ 13.) The issue here is the responsibilities of a *medical* director as to *medical* care, not the prison warden's knowledge of the provision of medical care. As the court spelled out clearly in *Flournoy*, which Defendants themselves cite to, Wexford's contract for services with the IDOC mandates that "the 'On-site Medical Director at the Center' . . [is] the 'medical authority' of the site and [is] charged with operating 'the health care program . . . . The On-site Medical director shall plan, implement, direct and control all aspects of the health care program.'" *Flournoy*, 2012 U.S. Dist. LEXIS 103388, at *14. Not only has Mr. Ford alleged facts to show Defendant Ghosh had personal knowledge of the delay and denial of Mr. Ford's treatment (Compl. ¶ 45, 57) but *Duncan* does not alleviate Defendant Ghosh's general responsibility to manage the provision of medical services at Stateville Correctional Center.

### B. Defendant Carter was Personally Involved in the Delay and Denial of Mr. Ford's Medical Treatment.

As to Defendant Carter, Mr. Ford adequately pleads his personal involvement in the denial of medical care to Mr. Ford. *First*, Defendant Carter adopted and implemented an express policy of voiding all orders made by his predecessor. (Compl. ¶ 45.) In furtherance of that policy, Defendant Carter voided the order for Mr. Ford's treatment, only to later reinstate the

order after an extended delay. (Compl. ¶¶ 45, 57.) The very fact that Defendant Carter reviewed the order referring Mr. Ford to the UIC Pain Clinic is more than enough to support Mr. Ford's contention that that Defendant Carter must have been aware of the order, and therefore Mr. Ford's serious medical need. Furthermore, as illustrated by Exhibit S to the Complaint, Defendant Carter was aware on September 23, 2011 that Mr. Ford "never got referred to [the UIC] pain center in Jan 2011 as documented by Dr. Ghosh." (Compl. Ex. S.) Defendant Carter's actions deliberately and predictably resulted in an extended delay in Mr. Ford's treatment, during which time his condition continued to worsen. (Compl. ¶¶ 52, 54, 57.)

*Second*, Defendants' repeatedly mischaracterize the allegations in Mr. Ford's Complaint by asserting that Mr. Ford visited the UIC Pain Clinic on December 6, 2011. (Mot. at 9, 10.) Mr. Ford did not do so. (Comp. ¶¶ 59-64.) As alleged in Mr. Ford's complaint, not only was Mr. Ford denied the scheduled treatment at the UIC Pain Clinic on December 6, 2011, but Defendant Carter was personally involved in the denial. (Compl. ¶ 67.) As Mr. Ford has alleged, Superintendant Pounovich stated to Defendant Grievance Officer McBee that Defendant Carter personally overrode Mr. Ford's permit for medical restraints, without which Mr. Ford could not be transported for treatment. (Compl. ¶ 67.) Defendants' continued unwillingness or inability to understand the prolonged and repeated denial of treatment to Mr. Ford is the very reason this litigation is now before this Court.

### C. Latonya Williams was Personally Involved in the Delay and Denial of Mr. Ford's Medical Treatment.

As to Defendant Williams, Mr. Ford has also adequately alleged that she was aware of and was deliberately indifferent to Mr. Ford's medical needs. (Compl. ¶¶ 23, 25, 40, 42.) Not only was Defendant Williams aware of Mr. Ford's condition, the repeated failure to provide Mr. Ford with permits as ordered, the continued prescribing of pain medicines which were known to

cause Mr. Ford's stomach to bleed, and the delay in his treatment at the UIC Pain Clinic, but she perpetuated that denial by failing to act to remedy the denial of care. (Compl. ¶¶ 23, 25, 40, 42.) Defendants do not dispute that there was any difference of medical opinion as to the necessity of any of the measures Defendant Williams did order. For example, Defendants do not dispute that Mr. Ford actually needed the back braces, ice, pain medicine that Williams ordered. (Compl. ¶¶ 37, 40, 42.) Defendants only dispute that Defendant Williams was responsible for actually following through on her decisions or those of the medical director.

Defendants are incorrect that Defendant Williams' decision to order a back brace is enough to insulate her from her repeated failure to obtain the permits she recognized Mr. Ford required. (Mot. at 7.) Defendants' own case law establishes that simply handing off an order is not sufficient to insulate a medical official from liability. *Flournoy*, 2012 U.S. Dist. LEXIS 103388, at *25.

## II. Defendants are not Entitled to Qualified Immunity because Defendants Violated Mr. Ford's Clearly Established Constitutional Rights.

Defendants are not entitled to raise qualified immunity for three reasons.

*First*, once again, Defendants misstate the governing legal standard. Although Defendants argue that Mr. Ford "was not ignored and left with no treatment," the standard of care in fact is not whether an inmate was ignored. (Mot. at 13.) Instead, the well-settled law in this Circuit is that an inmate need not show that he was completely ignored to state a claim for deliberate indifference of medical need. *Adams v. Detella*, No. 98-1613, 2000 U.S. App. LEXIS 30189, at *10 (7th Cir. 2000) ("[p]risoners are not required to show that they were completely ignored by prison medical staff to demonstrate deliberate indifference"); *Allen v. Wexford Health Sources, Inc.*, No. 11 C 3834, 2011 U.S. Dist. LEXIS 66537, *3-4 (N.D. Ill. June 17, 2011) ("the fact that a prisoner received some medical treatment does not necessarily defeat his claim.")

(citing *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005). Defendants' rote recitation of case law, evidently pulled from a brief addressing facts in no way relevant to the facts here, fails to overcome Mr. Ford's well pleaded complaint nor does it override Defendants Wexford, Ghosh, Carter, and William's liability in their official capacity.

*Second*, again, Defendants misstate the allegations contained in Mr. Ford's Complaint. Although Defendants note in their brief that "[w]hile the denial of dental care may classify as a constitutional violation . . . Plaintiff cannot demonstrate that the Wexford Defendants violated a clearly established constitutional right." (Mot. at 13.) But this *not* a case about *dental care*. Defendants' failure to engage with the facts of Mr. Ford's Complaint is indicative of their overall failure to address his serious medical need.

*Third*, Defendants have failed to establish that they are entitled to qualified immunity as a matter of law. In determining whether qualified immunity applies, the court considers whether the plaintiff has asserted a violation of a federal constitutional right and whether the constitutional standards allegedly violated were clearly established at the time in question. *Roe v. Elyea*, 634 F.3d 843, 858 (7th Cir. 2011). Mr. Ford's right to adequate medical care and treatment was clearly established at all times relevant to this action. *Id.* Defendants' repeated failure to treat Mr. Ford's condition or his pain violated his rights under the Eight Amendment. *See, e.g. Roe*, 631 F.3d at 861 (denying Defendant medical director's invocation of qualified immunity); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (delay in treatment may constitute deliberate indifference in violation of the Constitution if the delay exacerbated an injury or unnecessarily prolonged an inmate's pain); *Jones v. Simek*, 193 F.3d 485 (7th Cir. 1999) (plaintiff stated claim for deliberate indifference where plaintiff alleged defendants' refusal to treat his chronic pain). To the extent Defendants assert any particularized entitlement

to the defense, Defendants present a question of fact, not appropriate for a motion to dismiss. *See, e.g., Roe*, 631 F.3d at 853 (considering application of qualified immunity in a motion for judgment as a matter of law).

### III. Defendants Wexford, Dr. Ghosh, and Dr. Carter are Liable in Their Official Capacities.

Defendants are mistaken that they may not be sued in their official capacities. A plaintiff may bring official capacity claims seeking injunctive relief. *Taylor v. Wexford Health Services, Inc.*, No 11 C 7386, 2012 U.S. Dist. LEXIS 9260, *8 (N.D. Ill. Jan 26, 2012) (citing *Ex Parte Young*, 209 U.S. 123 (1908). Mr. Ford has sued Defendants Wexford, Ghosh and Carter in their official capacity seeking injunctive relief. (Compl. at 18.) To the extent Mr. Ford is seeking monetary relief, he does so only as part of his claims against Defendants in their individual capacities.

Furthermore, Mr. Ford has made detailed allegations regarding the existence of multiple policies and practices adopted by Defendants Wexford, Ghosh, and Carter as cost saving measures, which resulted in the deprivation of medical care and a violation of his constitutional rights. Mr. Ford has alleged the following policies and practices:

- Delaying scheduling medical appointments. (Compl. ¶¶ 20, 22, 28-29, 51.)

- Delaying the filling and renewal of prescriptions. (Compl. ¶¶ 31, 37, 42, 47.)

- Delaying the issuance of permits. (Compl. ¶¶ 20, 22, 28-29, 31, 37, 40, 42, 47, 52, 56.)

- Delaying the provision of treatment at third party providers (Compl. ¶¶ 37, 40, 47.)

- Defendant Carter's express policy of voiding all of Dr. Ghosh's orders. (Compl. ¶¶ 45-46.)

Thus, Mr. Ford has adequately alleged facts sufficient to show that Defendants Wexford, Ghosh, and Carter instituted and maintained policies which directly caused the deprivation of constitutionally adequate medical to Mr. Ford and are liable in their official capacities.

**CONCLUSION**

For all the foregoing reasons, this Court should deny Defendants Wexford, Ghosh, Carter and Williams' Motion to Dismiss the Amended Complaint.

Dated:  December 14, 2012

Respectfully submitted,
HUNDLEY LYNN FORD, JR.

__/s Terrence J. Truax_____
One of His Attorneys

Terrence J. Truax
Molly M. Powers
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654-3456
(312) 222-9350

## CERTIFICATE OF SERVICE

On December 14, 2012, I, Molly M. Powers, an attorney, caused a true and correct copy of the foregoing Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss to be served on the following counsel of record via email, due to the inaccessibility of the ECF/PACER system in the United States District Court for the Northern District of Illinois Eastern Division as result of system maintenance, and on December 16, 2012 caused a true and correct copy to be served on the following counsel of record via the ECF/PACER system in the United States District Court for the Northern District of Illinois Eastern Division:

James C. Vlahakis
Hinshaw & Culbertson, LLP
222 North LaSalle, Suite 300
Chicago, Illinois 60601
(p) 312-704-3715
(f) 312-704-3001
jvlahakis@hinshawlaw.com
*Counsel for Defendant Wexford Health Sources, Inc.,*
*Parthasarathi Ghosh, Imhotep Carter, and Latonya Williams*

Dated:  December 16, 2012                    __/s Molly M. Powers_____

                                   JENNER & BLOCK LLP
                                   353 North Clark Street
                                   Chicago, Illinois 60654
                                   (p) 312-222-9350
                                   (f) 312-840-7703
                                   mpowers@jenner.com

                                   *Counsel for Plaintiff,*
                                   *Hundley Lynn Ford, Jr.*