**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HUNDLEY LYNN FORD, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  12 C 4558 |
| v. | ) | |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On August 30, 2012, Plaintiff Hundley Lynn Ford, Jr. filed a three-count Corrected Amended Complaint against Defendants Nancy Pounovich, Marcus Hardy, Joseph Sheehey, Anna McBee, Parthasarathi Ghosh, S.A. Godinez, Darryl Edwards, Landria Dennis, Imat Carter, Latonya Williams, and Wexford Health Sources, Inc. ("Wexford") alleging three separate counts of deliberate indifference to his serious medical needs in violation of the Eighth Amendment. *See* 42 U.S.C. § 1983.  Defendants Williams, Ghosh, Carter (hereinafter the "Individual Defendants"), and Wexford have filed the present motion to dismiss Count I of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, the Court denies Wexford's motion to dismiss and grants in part and denies in part the Individual Defendants' motion to dismiss.

**BACKGROUND**

Ford is an inmate at Stateville Correctional Center ("Stateville").  (R. 11, Am. Compl. ¶¶ 1, 5.)  On or about April 20, 2008, Ford injured his back moving a property box in his cell.  (*Id.* ¶ 18.)  He alleges that his injury confined him to his cell for three days, rendering him unable to do

anything other than lie still. (*Id.* ¶¶ 18, 19.) Further, Ford contends that he sought medical attention by submitting written requests and by speaking with medical technicians, but received none. (*Id.* ¶ 19.)

Although Ford ate breakfast in his cell, lunch and dinner were only available four floors below his cell. (*Id.* ¶ 20.) Ford asserts that his injury precluded him from navigating stairs, and he requested, but did not receive, a medical lay-in permit that would have allowed him to receive meals in his cell while incapacitated. (*Id.*) Ford thus asserts that his failure to obtain a lay-in permit caused him to miss lunch and dinner for three days. (*Id.*) For the four years since his injury, Ford maintains that he has continued to go without lunch and dinner for multiple days at a time – approximately two to three times per month – due to his recurring pain and his inability to obtain a lay-in permit. (*Id.* ¶ 22.)

After his injury, Ford alleges that he made daily or near daily requests for medical attention, both in the form of written submissions to the Medical Treatment Box and verbal interactions with medical technicians. (*Id.* ¶ 21.) After six months of daily requests for medical attention, Defendant Latonya Williams, a physician's assistant at Stateville, prescribed Tylenol and analgesic balm to Ford. (*Id.* ¶ 23.) Nevertheless, Ford states that the medication was ineffective, and thus he continued to submit daily or near daily requests for medical attention. (*Id.* ¶ 24. )

Eight months later in June 2009, Williams prescribed physical therapy for Ford. (*Id.* ¶ 25.) Ford attended physical therapy nine months later, in March 2010, having submitted repeated written sick call requests while waiting for treatment. (*Id.* ¶ 26.) In June 2010, after completing three months of physical therapy with no resolution of the injury, Ford alleges that he

experienced a loss of feeling in his lower body, rendering him unable to move without assistance and causing him great pain. (*Id.* ¶¶ 27, 28.) Wendy, a medical technician, visited his cell but refused to issue him a lay-in permit, instead informing him that Defendant Parthasarathi Ghosh, Stateville's Medical Director, would see him four days later. (*Id.* ¶ 29.) Ford alleges that he sat for three days in "excruciating pain," and, unable to walk, went without lunch or dinner all three days. (*Id.*)

On June 28, 2010, Dr. Ghosh saw Ford and ordered an MRI of his back. (*Id.* ¶ 30.) In the six months before Ford received his MRI, he alleges that he submitted written sick call requests on account of his dissatisfaction with the medical treatment. (*Id.* ¶ 31.) In December 2010, Dr. Ghosh renewed Ford's permit for medical restraints, which allowed him to travel outside of the prison without using the more restrictive black box restraints that caused Ford to suffer back spasms and intense pain. (*Id.* ¶ 32.)

Ford received an MRI on January 19, 2011. (*Id.* ¶ 35.) Based on the results of the MRI, Dr. Ghosh diagnosed Ford with bilateral neuroforaminal stenosis caused by diffused disc bulges in his spine. (*Id.* ¶¶ 34, 35.) This diagnosis led Dr. Ghosh to refer Ford to the University of Illinois at Chicago Pain Management Clinic ("UIC Pain Clinic"). (*Id.* ¶ 36.) Four months passed without Ford visiting the UIC Pain Clinic. (*Id.* ¶ 37.) During this time, Ford alleges that prison officials confiscated his back brace because medical officials had failed to issue a permit for it. (*Id.* ¶ 37a.) Further, Ford maintains that he suffered continued back pain and that his medications had run out despite his timely requests for renewal. (*Id.* ¶ 37b.) Ford continued to lodge several complaints via written sick call slips, oral requests to medical technicians, and letters to Dr. Ghosh informing Dr. Ghosh that he was still awaiting treatment. (*Id.* ¶¶ 37c, 37d.)

3

On May 5, 2011, Ford filed a grievance. (*Id.* ¶ 37.) Cannon, a correctional counselor, answered the grievance responding that Ford was scheduled for a sick call one month later on June 8, 2011. (*Id.* ¶ 38.) Also, Ford alleges that Cannon did not address the five month delay of treatment that Dr. Ghosh ordered or the systemic failure by medical staff to timely renew his pain medication or issue permits. (*Id.*) Ford appealed the grievance denial to the Grievance Office, and Defendant Anna McBee, a grievance officer, denied the grievance after reviewing a memorandum from Delores Trevino, a registered nurse in the Health Care Unit ("HCU"). (*Id.* ¶ 39.) Ford then appealed his grievance to the Administrative Review Board ("ARB"), which also denied his grievance. (*Id.*) Defendant S. A. Godinez, the director of the Illinois Department of Corrections, concurred with the ARB's decision. (*Id.*)

Ford eventually received a sick call from Williams on June 10, 2011, at which point he notified Williams that he was still awaiting treatment at the UIC Pain Clinic, that prison officials had confiscated his back brace for lack of a valid permit, and that the Naproxen prescribed for his pain caused him abdominal pains and blood in his stool. (*Id.* ¶ 40.) In July 2011, having still not been taken to the UIC Pain Clinic, Ford submitted three additional grievances. (*Id.* ¶ 41.) More specifically, Ford alleges that he submitted his first grievance on July 21, 2011 detailing his continued pain and his lack of medication. (*Id.* ¶ 42.) He also explained that he had no access to ice nor his back brace – both on account of failure to obtain a valid permit. (*Id.*) Defendant Landria Dennis, a correctional counselor, responded, noting that Ford had been recently seen and was being evaluated for further treatment. (*Id.*) Thereafter, Ford filed a second grievance that reiterated the delay he had faced in visiting the UIC Pain Clinic, noting that Dr. Ghosh had previously submitted an order for him to receive treatment. (*Id.* ¶ 44.)

Counselor Dennis responded, this time explaining that Stateville's new Medical Director, Defendant Imat Carter, was reevaluating all orders previously made by Dr. Ghosh. (*Id.* ¶ 45.) Ford submitted a third grievance in July 2011, again claiming delay in treatment at the UIC Pain Clinic. (*Id.* ¶ 47.) He explained that his medication had run out and that Naproxen, prescribed by Dr. Carter, was ineffective as it caused stomach bleeding. (*Id.*) Counselor Dennis again responded, claiming Ford's concern was "not a grievable issue at this time due to there only being a 2 day time from between the date of the offender Ford being seen by Dr. Carter and the date offender Ford writing the grievance." (*Id.* ¶ 48.) Dennis explained that Dr. Carter was still evaluating Ford's concerns. (*Id.*)

Ford appealed Dennis' denial of his three July 2011 grievances to the Grievance Office, where McBee consolidated and denied all three after reviewing a memorandum from Trevino. (*Id.* ¶ 49.) Ford then appealed the denial to the ARB, which upheld the denial explaining that Dr. Carter was reviewing Ford's condition, that Ford's back brace permit had been renewed, that Ford was in "collegial review for UIC pain center," and that pain medications were ordered. (*Id.* ¶ 50.) Again, Godinez concurred in the decision. (*Id.*)

Three weeks after Ford's last grievance, he experience another episode of loss of feeling in his lower body, forcing him to remain in his cell in pain without lunch or dinner. (*Id.* ¶ 51.) Correctional Officers Grey and Rogers contacted Defendant Joseph Sheehey, a medical technician, and informed him of Ford's condition. (*Id.*) Ford alleges that Sheehey refused to render aid and refused to issue a medical lay-in permit stating that Dr. Carter would see Ford in a few days. (*Id.*) Once again, Ford went for several days without lunch or dinner. (*Id.*)

After this episode, Ford filed an emergency grievance complaining of inadequate pain medication and persistent worsening of his condition asking for a lay-in permit. (*Id.* ¶¶ 52, 54.) Defendant Marcus Hardy, Stateville's Warden, denied the emergency grievance. (*Id.* ¶ 53.) Dennis forwarded the grievance to the Grievance Office, where McBee denied it after reviewing the memorandum from Trevino. (*Id.*) Ford alleges that he appealed to the ARB, which denied the grievance, and Godinez concurred. (*Id.*) The following month, in September 2011, Ford reported that prison officials had once again confiscated his back brace due to lack of a renewed permit. (*Id.* ¶ 56.)

Several months later, in December 2011, Ford was finally scheduled to go to UIC Pain Clinic for treatment. (*Id.* ¶ 57.) Ford had a valid permit to travel using medical restraints (rather than black box restraints), but Defendant Nancy Pounovich, Stateville's Superintendent – hearing Ford's explanation of his medical need – ordered a correctional officer to replace Ford's medical restraints with black box restraints. (*Id.* ¶ 59.) Ford alleges that Pounovich then directed the correctional officer to escort Ford to the HCU and to have Ford sign a refusal if he refused to tolerate the black box restraints. (*Id.* ¶ 61.)

Meanwhile, in the HCU, a nurse confirmed Dr. Carter's authorization for medical restraints, and Dr. Carter himself also confirmed the order. (*Id.* ¶ 62.) The HCU nurse called Defendant Darryl Edwards, an Assistant Warden at Stateville, to inform him of Pounovich's refusal to allow Ford's use of medical restraints. (*Id.* ¶ 63.) Also, Ford asserts that Edwards did not instruct Pounovich to allow Ford to use medical restraints, but instead told the nurse to complete an incident report. (*Id.*) Ford alleges that Pounovich's and Edward's refusal to allow him to use medical restraints resulted in him not visiting the UIC Pain Clinic. (*Id.* ¶ 64.) Ford

then filed another grievance complaining of the denial of treatment. (*Id.* ¶ 65.) According to

Ford, Dennis denied the grievance stating that the prison's security concerns overrode his

medical concerns. (*Id.* ¶ 66.) McBee concurred with the denial, providing a different reason –

she claimed that "Carter was contacted prior to the grievant going on the writ and stated that the

grievant did not need medical restraints to go on the writ." (*Id.* ¶ 67.) Again, Ford appealed the

denial of the grievance to the ARB, which upheld the denial. (*Id.* ¶ 69.) Ford eventually went to

the UIC Pain Clinic for treatment, but continues to suffer pain and intermittent renewal of his

pain medications and medical permits. (*Id.* ¶¶ 70, 72.)

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See Hallinan v.*

*Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under

Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule

8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it

rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)

(citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations

must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct.

1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In evaluating the

sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as

true all well-pleaded factual allegations and making all possible inferences from the allegations

in the plaintiff's favor." *See AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011).

## ANALYSIS

### I.      Individual Defendants' Motion to Dismiss

In Count I of his Corrected Amended Complaint, Plaintiff brings an Eighth Amendment

claim for deliberate indifference to his serious medical needs against individual Defendants Dr.

Ghosh, Williams, Dr. Carter, and Sheehey.  Defendants Williams, Dr. Ghosh, and Dr. Carter

challenge the sufficiency of Count I pursuant to *Twombly* and *Iqbal*.  In addition, these

Individual Defendants argue that they are entitled to qualified immunity and are not liable for

suit in their official capacities.  The Court addresses each argument in turn.

#### A.      Eighth Amendment Deliberate Indifference

The Eighth Amendment's ban on cruel and unusual punishment imposes upon state

officials a duty to provide adequate medical care for incarcerated individuals.  *See Estelle v.

Gamble*, 429 U.S. 97, 103 (1976); *Holloway v. Delaware County Sheriff,* 700 F.3d 1063, 1072

(7th Cir. 2012).  A plaintiff alleging a deliberate indifference to serious medical needs claim must

demonstrate two elements: (1) an objectively serious medical condition; and (2) an official's

subjectively deliberate indifference to that condition.  *See Holloway,* 700 F.3d at 1072.  "A

medical need is considered sufficiently serious if the inmate's condition has been diagnosed by a

physician as mandating treatment or is so obvious that even a lay person would perceive the need

for a doctor's attention."  *Gomez v. Randle,* 680 F.3d 859, 865 (7th Cir. 2012) (citation omitted).

Under the second prong of a deliberate indifference claim, a plaintiff must establish that the

defendant knew of a serious risk to plaintiff's health and consciously disregarded that risk.  *See*

*Holloway,* 700 F.3d at 1073; *see also Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (the prison official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). "Deliberate indifference 'is more than negligence and approaches intentional wrongdoing.' In other words, [d]eliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts.'" *Arnett v. Webster,* 658 F.3d 742, 751 (7th Cir. 2011) (internal citations omitted).

Defendants do not dispute that Ford's bilateral neuroforaminal stenosis caused by diffused disc bulges in his spine, as diagnosed by Dr. Ghosh after the MRI scan, constitutes a serious medical condition. *See Gomez,* 680 F.3d at 865 ("The medical condition need not be life-threatening; 'it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.'") (citation omitted). The Court therefore turns to the subjective element of Ford's deliberate indifference claim.

In general, Ford has sufficiently alleged consistent delays in medical treatment that caused his continued suffering. *See Smith v. Knox Cty. Jail,* 666 F.3d 1037, 1040 (7th Cir. 2012) ("Even a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference."). Prison personnel, for example, repeatedly denied him lay-in permits to allow him to eat meals in his cell, requiring him – on several occasions – to go consecutive days without lunch or dinner. (Am. Compl. ¶¶ 20, 29, 51, 54.) In addition, prison officials provided Ford the same medication despite his repeated complaints that the medication was ineffective and caused stomach bleeding. (*Id.* ¶¶ 23, 24, 26, 31, 40, 54.) Also, prison personnel continually confiscated his back brace based on Ford's inability to obtain a

permit for its use. (*Id*. ¶¶ 37a, 40, 42, 56, 71.) Construing Ford's allegations as true, Ford waited nearly eleven months after Williams ordered physical therapy before his scheduled visit to the UIC Pain Clinic. (*Id*. ¶ 57.) That trip never happened, however, because prison officials refused to allow Ford the use of the medical restraints necessary for the trip and for which he had a valid permit. (*Id*. ¶¶ 58-67.) Ford has similarly alleged that in delaying his treatment, prison personnel were aware of his medical condition, especially because the delays occurred in the face of Ford's repeated unofficial and official complaints. (*Id*. ¶¶ 19, 20, 21, 24, 26, 31, 37b, 37d, 38, 39, 40, 41, 49, 52, 65, 68, 70, 71.) As such, Ford has alleged sufficient facts that plausibly suggest prison and medical personnel were aware of his condition, yet purposely delayed treatment. *See Iqbal*, 556 U.S. at 678; *Arnett,* 658 F.3d at 752.

Nevertheless, "individual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'" *Minix v. Canarecci,* 597 F.3d 824, 833-34 (7th Cir. 2010) (quotation omitted). It is well-settled that "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters,* 97 F.3d 987, 991 (7th Cir. 1996). Moreover, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009). Instead, a government official satisfies the personal responsibility requirement if the conduct causing the alleged constitutional deprivation occurs at the official's direction or with his knowledge and consent. *See Arnett,* 658 F.3d at 757. Accordingly, the Court must address the Individual Defendants' arguments that they were not personally involved in any such constitutional deprivation.

### 1. Latonya Williams

Defendant Williams was a Physician's Assistant at Stateville during the time of Ford's injury. (Am. Compl. ¶ 15.) During the approximately three-year period about which Ford complains, Williams saw him on several occasions. Her treatment consisted primarily of prescribing medicine, providing a back brace and ice, and referring Ford to physical therapy. (*Id*. ¶¶ 23, 25, 40.) In his Corrected Amended Complaint, Ford has pleaded sufficient facts that plausibly suggest Williams was personally responsible – at least in part – for his constitutional deprivation. *See Board v. Farnham,* 394 F.3d 469, 485 (7th Cir. 2005) ("deliberate indifference can be evidenced by repeated examples of negligent acts which disclose a pattern of conduct by the prison medical staff.") (citation omitted). Specifically, eight months passed between Williams' initial and subsequent visit with Ford, during which time he submitted "daily or near daily requests for medical attention" on account of the ineffectiveness of her treatment. (Am. Compl. ¶ 24.) Williams subsequently "failed to conduct an examination," but instead, prescribed physical therapy. (*Id.* ¶¶ 25, 26.) For eleven months, however, Ford never received physical therapy, during which time he "made additional, repeated requests for medical attention and reported the inadequate pain management treatment he was receiving by submitting written sick call requests." (*Id.* ¶¶ 26, 27.)

Also, during this time period, medical staff provided a back brace for Ford, but on numerous occasions, his brace was confiscated because "Williams, and/or other medical staff employed by Defendant Wexford, failed to issue him a permit." (*Id.* ¶ 37a.) Although Williams wrote a permit for ice to treat Ford's back, he "never received the permit and so he could not obtain ice." (*Id.* ¶ 42.) Ford also alleges that Williams' alleged failure to provide him with a

permit for his back brace or his ice contributed to months of "serious pain from diagnosed

bulging discs." (*Id.* ¶ 42.) Based on these allegations, Ford has sufficiently alleged that Williams

personally participated in his constitutional deprivation.

### 2. Parthasarathi Ghosh

Parthasarathi Ghosh was the Medical Director at Stateville from June 23, 2003, until July

2011. (Am. Compl. ¶ 14.). In this role as Medical Director, he oversaw all medical staff

operating in Stateville. (*Id.* ¶ 14.) Additionally, he interacted personally with Ford on several

occasions, including scheduling an MRI for Ford (*Id.* ¶ 30), diagnosing Ford with bilateral

neuroforaminal stenosis on the basis of the MRI results (*Id.* ¶ 35), and referring Ford to the UIC

Pain Clinic. (*Id.* ¶ 36.)

Construing Ford's allegations as true, he has alleged sufficient factual matter that Dr.

Ghosh was personally involved in depriving him of his constitutional rights. During the time Dr.

Ghosh oversaw all medical operations at Stateville, Ford suffered delayed medical treatment

leading to "severe back pain without relief" and, at times, to consecutive days "without lunch or

dinner" on account of delayed treatment. (*Id.* ¶¶ 29, 37b.) Also, during this time period, Ford

submitted numerous official and unofficial complaints alerting the medical staff of his lack of

treatment, including "[writing] to Defendant Ghosh numerous times to notify him that Ford was

still awaiting treatment."[1] (*Id.* ¶ 37c.) As such, Ford has alleged sufficient facts to support that

Dr. Ghosh had knowledge of Ford's serious medical condition and was personally involved in

---

[1] Despite Defendants' argument to the contrary, Ford was not required to attach the letters he sent to Dr. Ghosh to withstand Defendants' Rule 12(b)(6) motion to dismiss. *See Arnold v. Janssen Pharm., Inc.,* 215 F.Supp.2d 951, 962 (N.D. Ill. 2002) ("federal courts, unlike Illinois state courts, do not require that critical documents be attached to the complaint").

the deprivation of his Eighth Amendment rights. *See Estelle,* 429 U.S. at 104-05 (deliberate indifference to serious medical needs violates the Eighth Amendment "whether the indifference is manifested by prison doctors in their response to their prisoner's needs or by prison guards in intentionally denying or delaying access to medical care"). Moreover, as Stateville's Medical Director, Dr. Ghosh had the responsibility to ensure that prison inmates receive adequate medical care. *See Duncan v. Duckworth,* 644 F.2d 653, 655 (7th Cir. 1981). "This responsibility is a sufficient basis from which to infer his personal involvement in the denial of such care at the pleading stage of the proceeding." *Id.*; *see also Flournoy v. Dr. Ghosh,* ___ F.Supp.2d ___, 2012 WL 3042794, at *9 (N.D. Ill. July 24, 2012).

### 3. Imat Carter

Imat Carter was Stateville's Medical Director during part of 2011 and part of 2012. (Am. Compl. ¶ 14.) Like Dr. Ghosh, his predecessor, Dr. Carter oversaw all medical staff at Stateville. (*Id.*) Dr. Carter also had personal involvement with Ford. In particular, Dr. Carter saw Ford on July 27, 2011, and prescribed him Naproxen for his pain; he initially confirmed his order for medical restraints during transport; and he later stated that Plaintiff "did not need medical restraints to go [to the pain clinic]." (*Id.* ¶¶ 43, 45, 62, 67.) Ford's allegations also include the fact that Dr. Carter saw him on September 23, 2011, at which time Dr. Carter ordered pain medications and renewed Ford's back brace permit. (*Id.* ¶ 50.)

Defendants argue that Ford has "pled himself out of court by alleging that he was seen by Defendant Carter on September 23, 2011." Although a plaintiff may plead himself out of court by alleging facts showing that he has no legal claim, *see Peterson v. McGladrey & Pullen, LLP,* 676 F.3d 594, 600 (7th Cir. 2012), the fact that Dr. Carter saw Ford does not establish that Ford

13

has not sufficiently alleged his deliberate indifference claim against Dr. Carter. For largely the same reasons Ford's claim against Dr. Ghosh survives, Ford's claim against Dr. Carter also survives the present motion to dismiss. Here, Ford has pleaded facts sufficient to infer Dr. Carter's plausible involvement in Ford's medically deficient care. During Dr. Carter's tenure, Ford suffered delayed medical treatment leading to "constant and intense pain" and causing him to go "without lunch or dinner for multiple days." (*Id.* ¶¶ 46, 51.) Further, Ford filed multiple complaints to prison officials – including an emergency grievance to Warden Hardy – regarding these delays and the resulting pain and suffering. (*Id.* ¶¶ 42, 44, 47, 49, 52, 56, 65, 68, 70.) These facts, taken as true, sufficiently state a claim against Dr. Carter for his personal involvement in Ford's constitutional injury. As with Dr. Ghosh, it is reasonable to infer that Dr. Carter, Stateville's Medical Director, had knowledge of Ford's condition by virtue of Ford's continued complaints, Ford's allegation that Dr. Carter reevaluated all of Dr. Ghosh previous orders, and the allegation that Dr. Carter saw Ford on July 27, 2011 and September 23, 2011. Therefore, Ford has alleged sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

### B. Qualified Immunity

Next, the Individual Defendants contend that they are entitled to qualified immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "In actions under 42 U.S.C. § 1983 alleging violations of constitutional rights, qualified immunity shields an official from liability for civil damages, provided that the illegality of the official's conduct was not clearly established at the time he acted." *Roe v. Elyea,* 631 F.3d 843, 858 (7th Cir. 2011). In

determining whether the Individual Defendants are entitled to qualified immunity, the Court

must decide if: (1) the facts, taken in a light most favorable to Ford, make out a violation of a

constitutional right; and (2) whether the right was clearly established at the time of the Individual

Defendants' alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 236-42, 129 S.Ct. 808,

172 L.Ed.2d 565 (2009); *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272

(2001).

Whether a privately employed medical official working at a prison may invoke qualified

immunity is an open question in the Seventh Circuit. *See Sain v. Wood,* 512 F.3d 886, 893 (7th

Cir. 2008) (Given "the failure to raise at the district court level the issue of [defendant's]

ineligibility for qualified immunity because of his private employment . . . we decline to address

the merits of the argument."); *see also Richardson v. McKnight,* 521 U.S. 399, 412-13, 117 S.Ct.

2100, 138 L.Ed.2d 540 (1997) (private prison guards employed by a private firm not entitled to

qualified immunity). Assuming the Individual Defendants may seek qualified immunity,

construing the facts in a light most favorable to Ford, he has sufficiently set forth his deliberate

indifference claims against Dr. Carter, Dr. Ghosh, and Williams under the first factor of the

qualified immunity standard. The Court therefore turns to the second factor.

Since the Supreme Court's 1976 decision in *Estelle*, "it ha[s] been clearly established that

medical treatment of prisoners would amount to cruel and unusual punishment if the conduct

demonstrated a 'deliberate indifference' to the prisoner's condition and an 'unnecessary and

wanton infliction of pain.'" *Walker v. Shansky,* 28 F.3d 666, 670 (7th Cir. 1994) (citation

omitted). Indeed, the Seventh Circuit has repeatedly concluded that disregarding inmate

complaints of severe pain constitutes deliberate indifference. *See Board,* 394 F.3d at 485;

15

*Walker v. Benjamin,* 293 F.3d 1030, 1040 (7th Cir. 2002). Because these cases are analogous to the present matter, the Individual Defendants had fair warning that their treatment of Ford was unconstitutional. *See Tebbens v. Mushol,* 692 F.3d 807, 820 (7th Cir. 2012).

Further, to the extent that the Individual Defendants contend that they are entitled to qualified immunity because it was not clearly established that their delay in procuring Ford medical treatment violated Ford's constitutional rights, the Seventh Circuit has held:

> Whether a delay in providing medical treatment has negatively affected a plaintiff's well-being is an assessment that is made in hindsight, so it cannot affect an officer's initial decision to seek treatment for an inmate. In other words, because the eventual presence or absence of verifying medical evidence cannot bear on an officer's decision to seek or deny treatment, it cannot provide a basis for immunity.

*Williams v. Liefer,* 491 F.3d 710, 716 (7th Cir. 2007). Therefore, the Individual Defendants' qualified immunity argument fails.

## C.      Official Capacity Claims

In addition to his individual capacity claims, Ford seeks injunctive relief against Defendants Dr. Ghosh, Williams, and Dr. Carter in their official capacities. "[A]n official capacity suit is another way of pleading an action against an entity of which the officer is an agent." *Sow v. Fortville Police Dep't,* 636 F.3d 293, 300 (7th Cir. 2011) (citing *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Accordingly, Ford's official capacity claim against Williams, Dr. Ghosh, and Dr. Carter in their official capacities amounts to a claim against Wexford, their employer. As Wexford is already a named Defendant, Ford's claim against Williams, Dr. Ghosh, and Dr. Carter in their official capacities is redundant and unnecessary. *See Klebanowski v. Sheahan,* 540 F.3d 633, 637 (7th

16

Cir. 2008) ("[a]n official capacity suit is tantamount to a claim against the government entity itself.") (citation omitted). The Court therefore grants the Individual Defendants' motion to dismiss the official capacity claim brought against them.

## II.    Official Capacity Claim against Wexford

The Court now turns to Ford's official capacity claim against Wexford brought pursuant to *Monell* and its progeny. Wexford, a private corporation contracted by the Illinois Department of Corrections, is subject to a *Monell* claim for Section 1983 liability just as any municipality would be. *See Minix,* 597 F.3d at 832. "To establish municipal liability, a plaintiff must show the existence of an 'official policy' or other governmental custom that not only causes but is the "moving force" behind the deprivation of constitutional rights." *Teesdale v. City of Chicago,* 690 F.3d 829, 833-34 (7th Cir. 2012). Also, Ford must allege facts sufficient to show "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* at 834 (7th Cir. 2012) (citation omitted).

In the motion to dismiss, Wexford argues that Ford has failed to allege a custom or practice of deliberate indifference to his medical needs. Despite Wexford's argument to the contrary, Ford has alleged a widespread practice among Wexford employees of delaying medical treatment that caused him unnecessary pain and suffering. (Am. Compl. ¶ 75.) Specifically, he alleges facts showing a custom or practice of: (1) delayed delivery of medical permits (*Id.* ¶¶ 20, 29, 51, 54); failure to administer medication or administration of ineffective medication (*Id.* ¶¶ 19, 24, 26, 31, 37b, 40, 42, 47, 52, 54); and delayed scheduling of medical appointments (*Id.* ¶¶

17

19, 21, 23, 31, 37c, 41, 44, 46, 47, 52, 64, 70). Viewing these allegations in a light most favorable to Ford, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in Ford's favor, these allegations support a permissible inference that Wexford has a widespread custom or practice of treating inmates' medical needs with deliberate indifference. *See Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681-82 (7th Cir. 2012); *AnchorBank,* 649 F.3d at 614. Because Ford has sufficiently alleged a *Monell* claim that is plausible on its face under the federal notice pleading standards, the Court denies Wexford's motion to dismiss. *See Twombly,* 550 U.S. at 570.

## CONCLUSION

For the preceding reasons, the Court grants the Individual Defendants' motion to dismiss Ford's deliberate indifference claim brought against them in their official capacities, but denies their motion to dismiss Ford's deliberate indifference claim brought against them in their individual capacities. Further, the Court denies Wexford's motion to dismiss.

**Date:** February 7, 2012

ENTERED

_____

**AMY J. ST. EVE**
**United States District Court Judge**

18